ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| YAMILET MARRERO CALDERO<br>Apelado<br><br>v.<br><br>AUTO LOI, LLC<br>Apelante | KLAN202401090 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Número: BY2023CV03795<br><br>Sobre: Despido injustificado (Ley Núm. 80) y Otros |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de marzo de 2025.

Comparece Auto LOI, LLC (Auto LOI o apelante) y cuestiona parte del dictamen notificado el 26 de noviembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario). Tras entender sobre sendas solicitudes de sentencia sumaria interpuestas por ambas partes, el foro primario declaró ha lugar la solicitud de *Sentencia Declaratoria* interpuesta por la señora Yamilet Marrero Caldero (apelada o señora Marrero Caldero), denegó la adjudicación de la causa de acción sobre el despido injustificado bajo la Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA secs. 185a et seq. (Ley 80) y la causa de acción por represalias (Ley 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA sec. 194, *et seq (Ley 115)* por la vía sumaria y nuevamente desestimó las reclamaciones relacionadas al pago de salarios adeudados por concepto de vacaciones, enfermedad y horas extras.

En su recurso el apelante nos solicita la revocación de la *Sentencia Declaratoria* que forma parte del dictamen emitido mediante la cual el TPI declaró un *Acuerdo de Comisiones* nulo. A su

vez, solicita nuestra intervención sobre la denegatoria a su petitorio sumario relacionado a la causa de acción sobre represalias al amparo de la Ley 115, *supra.*

Por los fundamentos que exponemos a continuación, únicamente intervenimos y revocamos la *Sentencia Declaratoria,* mediante la cual, el foro primario declaró nulo un *Acuerdo de Comisiones.*

**I.**

La señora Marrero Caldero presentó una *Querella* contra su antiguo patrono, Auto LOI, LLC de forma sumaria, al amparo de la Ley 2 del 17 de octubre de 1961 (Ley 2). Por entender que su despido fue injustificado y por razón de los actos de represalias en su contra, solicitó remedios al amparo de la Ley 80, *supra,* y la Ley 115, *supra,* respectivamente.   Además, solicitó una *Sentencia Declaratoria* para establecer la nulidad del *Acuerdo de Comisiones* suscrita entre las partes, por ser contrario a las disposiciones de la Ley 180-1998, 29 LPRA, sec. 250d(q), conocido como *Ley de Vacaciones y Licencia de Enfermedad* (Ley 180-1998). Con posterioridad, la apelada enmendó sus alegaciones para añadir dos causas de acción adicionales con relación al pago de salarios por concepto de licencia de vacaciones y horas extras.

En reacción, Auto LOI se opuso a las alegaciones[1] y expresó que, la señora Marrero Caldero, incumplió la cuota mínima de ventas de automóviles en abril, mayo, julio, agosto y septiembre de 2022, por lo que, su despido respondió a una justa causa. Planteó que, antes de efectuar el despido, orientó a la empleada y luego mediante una amonestación escrita, advirtió que, de incumplir la cuota de ventas en tres meses consecutivos, conllevaría su terminación de empleo. Además, negó alegaciones de discrimen y

---

[1] Véase Apéndice págs. 10-26 *Contestación a La Querella* y págs. 46-67 *Contestación a La Querella Enmendada.*

represalias. Sostuvo que, no interfirió con el disfrute de sus licencias por enfermedad y vacaciones. Expuso que, el despido de la señora Marrero Caldero fue causado por el interés legítimo de Auto LOI, LLC de mantener el buen funcionamiento de sus operaciones. En particular, sostuvo que, el *Acuerdo de Comisiones* forma parte del contrato de empleo y resulta válido en su totalidad. Por último, negó adeudar cantidad alguna a la señora Marrero Caldero. Ello, por entender que, conforme a la Ley Núm. 379 de 15 de mayo de 1948, según enmendada, conocida como la *Ley para Establecer la Jornada de Trabajo en Puerto Rico,* 29 LPRA secs. 271 *et seq.* y el contrato de empleo, no tenía derecho al pago por horas extras. Añadió que, a su entender, el proceso debió ser convertido en uno ordinario ante la radicación de la *Querella Enmendada.* Por todo lo anterior, solicitó la desestimación de la causa instada.

Auto LOI, presentó una *Moción de desestimación parcial por prescripción,* el 9 de enero de 2024, por entender que, la causa de acción sobre el pago de licencias de vacaciones y horas extras estaba prescrita. Abundó que, como empleada no exenta, la señora Marrero Caldero acumulaba días por enfermedad y vacaciones, según la Ley 180-1998, *supra,* pero no tenía derecho a beneficios de la Ley 379-1948, *supra,* como pagos por horas extras y por el periodo de tomar alimentos, por lo que, le corresponde el término prescriptivo de un año para reclamación de salarios según el Artículo 12 de la Ley 180-1998, 29 LPRA sec. 250j(a). La señora Marrero Caldero se opuso.

Evaluado lo antes, el TPI, mediante *Sentencia Parcial* notificada el 27 de febrero de 2024, desestimó la causa de acción relacionada al pago de salarios por concepto de vacaciones, enfermedad y horas extras trabajadas. Dicho dictamen fue objeto de revisión judicial ante esta Curia (Recurso Núm. KLAN202400233) y mediante *Sentencia* de 23 de abril de 2024 se confirmó el dictamen apelado. Posterior a ello, el Tribunal Supremo (Recurso Núm. CC-

2024-0289) no expidió el auto de *certiorari* instado. En su consecuencia, el referido dictamen advino final y firme.

Así las cosas, la apelada presentó una *Moción de Sentencia Sumaria Parcial y para que se dicte Sentencia Declaratoria.* En su petitorio, procuró que el TPI emitiera una *Sentencia Declaratoria* en aras de establecer la nulidad del *Acuerdo de Comisiones.* De emitirse el dictamen declaratorio, arguyó que, procedería declarar ha lugar la causa de acción por despido en injustificado.[2] Por su parte, Auto LOI, LLC presentó una *Oposición A Moción de Sentencia Sumaria Parcial y para que se dicte Sentencia Declaratoria,* el 6 de noviembre de 2024, a la cual anejó partes de las deposiciones del señor Néstor Rodríguez, de la apelada, y de la señora Yaritza Agosto gerente de recursos humanos, así como una Tabla de Ventas.[3] En esencia, planteó que, no existen controversias sobre el listado de hechos propuestos por la señora Marrero Caldero, pero resultan insuficientes para invalidar el *Acuerdo de Comisiones* y para sostener las causas de acción. Añadió once (11) hechos adicionales y arguyó que, no procedía la Sentencia Declaratoria, como cuestión de derecho y, en la alternativa, procedía declarar la validez del *Acuerdo de Comisiones.*

Con igual fecha de la presentación del petitorio sumario de la apelada, Auto LOI, presentó una *Moción de sentencia sumaria parcial,* el 30 de septiembre de 2024. En esta, solicitó la desestimación de la causa por concepto de represalias, por la vía sumaria. En su petitorio, propuso 37 hechos incontrovertidos para demostrar la insuficiencia de la prueba y de las alegaciones para

---

[2] Apéndice, págs. 154-204. Junto a escrito incluyó los siguientes anejos: Exhibit A-Contrato de Periodo Probatorio; Exhibit B-Acuerdo de Comisiones; Exhibit C-Deposición de Yaritza Agosto Torres; Exhibit D-Memorando del 3 de junio de 2022; Exhibit E-Memorando del 1ro de septiembre 2022; Exhibit F-Carta de despido del 30 de septiembre de 2022; y Exhibit G-Aviso de Toma de Deposición Duces Tecum dirigida a Auto LOI, LLC.
[3] Apéndice págs. 205-237.

sustentar un caso *prima facie* de represalias.[4] La señora Marrero Caldero se opuso a lo anterior mediante *Oposición a Moción de Sentencia Sumaria Parcial* instada el 6 de noviembre de 2024.[5] De las 37 propuestas de hechos de Auto LOI, la apelada admitió los hechos número 1,2,3,4,5,8,9-20,22-28 y 33-37, negando así los demás hechos propuestos. En su argumentación, destacó que, existían controversias medulares que impedían la adjudicación de la causa de acción sobre represalias, por la vía sumaria. A su entender, se requiere un juicio en su fondo para dilucidar el nexo causal entre la conducta cobijada, el despido y los actos de represalia sufridos por ella. En su escrito, incluyó nueve (9) hechos propuestos adicionales para sostener su postura. En reacción a una orden emitida el 13 de noviembre de 2024 por el TPI, prohibiendo la presentación de réplicas y dúplicas, el apelante instó una *Moción en Solicitud de Aclaración de Orden sobre Réplicas a Mociones Dispositivas,* el 22 de noviembre de 2024.[6]

Luego de evaluar las referidas mociones sometidas ante su consideración, el foro primario notificó el dictamen apelado, en el cual consignó los siguientes 33 hechos incontrovertidos:

1. Auto LOI, LLC (Auto) opera un concesionario de ventas de vehículos haciendo negocios como Hyundai de Bayamón.
2. Auto se dedica principalmente a la venta de vehículos nuevos marca Hyundai, aunque también vende vehículos usados y opera un taller de mecánica para ofrecer servicios de garantía.
3. La señora Marrero comenzó a trabajar en Auto, el 28 de octubre de 2019.
4. La querellante fue contratada como "Ejecutiva de ventas de autos nuevos y usados", y ocupó ese mismo puesto hasta la fecha de su despido.
5. Como "Ejecutiva de ventas de autos nuevos y usados", la función principal de la señora Marrero era vender vehículos.
6. Como "Ejecutiva de ventas de autos nuevos y usados", y como parte del "Acuerdo de comisiones" (Acuerdo), la querellante tenía que vender y cobrar 10 unidades nuevas o usadas en el mes.

---

[4] Apéndice, págs. 78-153. Con su petitorio sumario incluyó los siguientes documentos: Exhibit 1-Deposición de Yamilet Marrero Caldero; Exhibit 2-Deposición de Yaritza Agosto Torres; Exhibit 3-Deposición de Nestor R. Rodríguez De Jesús; y Exhibit 4-Carta suscrita por Kevin J. Vargas Sánchez del 30 de septiembre de 2022.
[5] Apéndice, págs. 238-298. Junto a su oposición incluyó lo siguiente: Anejo A-Deposición de la señora Yamilet Marrero Caldero.
[6] Apéndice págs. 305-306.

7. El Acuerdo para los "Ejecutiva de ventas de autos nuevos y usados", vigente para la fecha de los hechos, dispone en su parte pertinente que:

> Todo vendedor debe cumplir mensualmente con la siguiente condición: vender mínimo 10 autos (nuevos y usados). Es requisito indispensable del puesto que todo vendedor cumpla por 3 meses consecutivos con la cuota mínima de ventas. El incumplimiento por 3 meses consecutivos de la cuota mínima de ventas resultará en la terminación de empleo, sin excepciones. El disfrute de licencia de vacaciones o enfermedad no eximirá a ningún vendedor de esta exigencia.

8. El 9 de mayo de 2022, Auto le pagó a la querellante ocho (8) horas de licencia por enfermedad.

9. El 24 de mayo de 2022, Auto le pagó a la querellante ocho (8) horas por licencia de enfermedad.

10. Los días 26, 27 y 28 de mayo de 2022, fueron cargados por Auto como enfermedad, sin paga, a la querellante.

11. El 3 de junio de 2022, la señora Marrero fue amonestada, por escrito, por incumplir con su cuota mínima de comisiones, por segundo mes consecutivo.

12. En dicho escrito, entre otras cosas, Auto señaló lo siguiente:
........

> Es requisito indispensable del puesto que el empleado o empleada cumpla con una de estas condiciones, de lo contrario, su incumplimiento par tres meses consecutivos resultara en la terminaci6n de su empleo, sin excepciones. El disfrute de licencia de vacaciones o enfermedad no eximirá a ningún Ejecutivo o Ejecutiva de Ventas de Autos del cumplimiento con esta Política. Durante los meses de abril y mayo de 2022, usted no cumplió con ninguno de los requisitos de cuota mínima. Por lo tanto, lleva un incumplimiento consecutivo de dos meses. Responsablemente le notificamos que, de incumplir con la cuota de comisiones durante el mes de junio de 2022, según establecen nuestras normativas, procederemos a terminar su empleo. De cumplir con los términos de cuota mínima durante el mes corriente, no aplicara la terminación de empleo, bajo estos términos.

13. La querellante se ausentó por enfermedad los días 8, 9, 10 y 11 de agosto de 2022 y se le pagó por enfermedad treinta y dos (32) horas.

14. El 1 se septiembre de 2022, la señora Marrero fue amonestada por escrito, por segunda ocasión, ya que, según Auto, esta incumplió con su cuota mínima de comisiones, por segundo mes consecutivo, a saber;
........

> Es requisito indispensable del puesto que el empleado o empleada cumpla con una de estas condiciones, de lo contrario, su incumplimiento por tres meses consecutivos resultará en la terminación de su empleo, sin excepciones. El disfrute de licencia de vacaciones o enfermedad no eximirá a ningún Ejecutivo o Ejecutiva de Ventas de Autos del cumplimiento con esta Política. (Énfasis nuestro.) Durante los meses de julio y agosto de 2022, usted no cumplió con ninguno de los requisitos de cuota mínima. Por lo tanto, lleva un incumplimiento consecutivo de dos meses. Responsablemente le notificamos que, de incumplir con la cuota de comisiones durante el mes de septiembre de 2022, según establecen nuestras normativas, procederemos a terminar su empleo. De cumplir con los términos de

cuota mínima durante el mes corriente, no aplicará la terminación de empleo, bajo estos términos.

15. La señora Marrero trabajó en Auto hasta el 30 de septiembre de 2022, fecha en que fue despedida.

16. La carta de despido señala "[s]irva la presente para notificarle que efectivo hoy, 30 de septiembre de 2022, Auto Loi LLC, ha decidido prescindir de sus servicios, de conformidad con la Octava Cláusula del contrato suscrito entre usted y nuestra Corporación".

17. El 30 de mayo de 2022, la señora Marrero envió un mensaje a Rodríguez, a través de la plataforma WhatsApp, solicitándole una reunión.

18. El señor Rodríguez le contestó "te aviso" o algo similar.

19. Días después, no habiéndose llevado a cabo la reunión con el señor Rodríguez, la señora Marrero envió un correo electrónico a Yaritza Agosto (señora Agosto), gerente de recursos humanos, solicitándole una reunión.

20. La señora Agosto le preguntó a la señora Marrero si se había podido reunir o dialogar con el señor Rodríguez, a lo que esta contestó que no lo había podido hacer, pues el señor Rodríguez no le había contestado su mensaje por WhatsApp.

21. Ese mismo día, el señor Rodríguez le notificó a la señora Marrero que se reunirían al día siguiente, lo que hicieron.

22. Durante la reunión con el señor Rodríguez, la querellante mencionó dos situaciones que había tenido con el señor Vargas, relacionado a un descuento que este último no le autorizó para la venta de un vehículo, y sobre una clienta que ella entró al sistema de ventas y que fue subsiguientemente asignada a otro vendedor. La señora Marrero mencionó, además, que el señor Vargas no le hablaba.

23. En cuanto al descuento no autorizado, por el señor Vargas, la señora Marrero expresó que un cliente llegó al concesionario y le indicó que si le vendía un Hyundai Accent por el precio de $20,995, se lo compraba en ese momento. Dicho vehículo tenía un precio de venta de $21,995.

24. La señora Marrero le preguntó al señor Vargas si autorizaba el descuento, y éste le contestó que no iba a autorizar la venta de ese vehículo en ese precio ($20,995).

25. La señora Marrero entonces le indicó "¡contra, Kevin!, yo lo que quiero, verdad, es hacer mi cuota."

26. El señor Vargas le respondió que él tenía que velar por el "profit" de Auto, que los estaba vendiendo en $21,995.00, y, refiriéndose al precio de venta le cuestionó por qué tenía que bajar el precio más.

27. El señor Vargas, como gerente de ventas, es quien decide el precio final de venta de los automóviles, pues tiene la oportunidad de ver el macro y considerar qué representa esa venta para el negocio en términos de "profit".

28. El señor Vargas recibe una comisión por cada vehículo vendido por lo que, a mayor número de vehículos vendidos, mayor es su comisión.

29. La práctica general en Auto es que el cliente es del primero que lo suba al sistema de ventas, salvo que el vendedor no le dé seguimiento en tres o cuatro días y, entonces, Auto se lo puede asignar a otro vendedor.

30. Si bien esta es la práctica, no hay nada garantizado para el vendedor que primero entre a un cliente al sistema de ventas y no hay una política o protocolo escrito sobre los clientes entrados al sistema de ventas de Auto.

31. Luego de la reunión con el señor Rodríguez, la querellante solicitó reunirse con la señora Agosto.

32. Durante esa reunión con la señora Agosto, la señora Marrero le mencionó lo que habló con el señor Rodríguez y le dijo, además, que ella no estaba bien emocionalmente.

33. La señora Agosto la aconsejó, la apoyó, y le subió la autoestima.[7]

Basado en lo antes, el foro primario dictó una *Sentencia Declaratoria* mediante la cual, concluyó que el *Acuerdo de Comisiones* es nulo. Sin embargo, denegó la solicitud de sentencia sumaria presentada por Auto LOI, por entender que, la señora Marrero Caldero levantó suficientes hechos para demostrar que puede tener una acción de represalias. Asimismo, denegó el petitorio sumario de la señora Marrero Caldero, por entender que, no estaba en posición para resolver si el despido fue injustificado. En su dictamen, el TPI volvió a desestimar la causa de acción sobre salarios adeudados, la cual, ya había sido adjudicada mediante *Sentencia Parcial* emitida el 27 de febrero de 2024.

Inconforme, Auto LOI, acude ante esta Curia y señala la comisión de los siguientes errores:

> Erró el TPI al concluir que toda queja, independientemente de su fundamento, activa las protecciones contra represalias establecidas en la Ley 115-1991.

> Erró el TPI cuando decidió que la querellante incurrió en actividad protegida por la Ley 115-1991.

> Erró el TPI al concluir que el acuerdo de comisiones suscrito entre las partes es nulo por limitar el derecho de los empleados a disfrutar de sus licencias por vacaciones y enfermedad.

> El TPI erró, abusó de su discreción y violentó el debido proceso de ley de las partes cuando los privó de su derecho a oponerse al listado de hechos adicionales presentados por éstas conforme permite la Regla 36 de Procedimiento Civil.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### A. Sentencia Sumaria

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36, permite a los tribunales disponer, parcial o totalmente, de litigios civiles en

---

[7] Apéndice, págs. 314-318.

aquellas situaciones en las cuales no existe controversia real y sustancial de un hecho material que requiera ventilarse en un juicio plenario, por lo cual solo resta aplicar el derecho. *Cruz Cruz y otra v. Casa Bella Corp. y otros,* 2024 TSPR 47, resuelto el 8 de mayo de 2024; *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company,* 2023 TSPR 120, resuelto el 3 de octubre de 2023. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 de je 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues agiliza el proceso judicial, mientras simultáneamente provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Serrano Picón v. Multinational Life Ins.,* 212 DPR 981, 992 (2023). Como se sabe, procede dictar sentencia sumaria si se desprende de las alegaciones, deposiciones, declaraciones juradas, contestaciones a interrogatorios, admisiones ofrecidas, entre otros, que no existe controversia real sustancial sobre un hecho esencial y pertinente, y siempre que el derecho aplicable así lo justifique. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601, 610-611 (2023). De manera que, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los

asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023). Véase, además, la Regla 36.3 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. Si el promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015). Además, el promovente de una solicitud de sentencia sumaria ha de acompañar su petitorio con prueba de la cual surja preponderantemente la ausencia de controversias sobre los hechos medulares del caso. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company,* supra.

Cabe destacar que, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra, pág. 43. Por el contrario, la Regla 36.3(c) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c), obliga a quien se opone a que se declare con lugar esta solicitud a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.* A esos efectos, deberá sustentar con evidencia sustancial los hechos materiales que entiende están en disputa.

*Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company,* supra.

Por ello, en la oposición a una solicitud de sentencia sumaria, el promovido debe detallar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos, deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.*

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por el promovente. *E.L.A. v. Cole,* 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues sólo procede si bajo ningún supuesto de hechos prevalece el promovido. *Íd.,* pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz Cruz y otra v. Casa Bella Corp. y otros,* supra. Además, existen casos que no se deben resolver mediante sentencia

sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.*

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. En particular, nuestro más Alto Foro señaló que:

> [...] el Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, los foros apelativos nos encontramos en la misma posición que el Tribunal de Primera Instancia y utilizamos los mismos criterios para evaluar la procedencia de una sentencia sumaria. *Cruz Cruz y otra v. Casa Bella Corp. y otros,* supra. Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa. *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *Acevedo y otros v. Depto Hacienda y otros,* 212 DPR 335, 352 (2023).

**III.**

En cumplimiento con el deber que nos impone *Roldán Flores v. M. Cuebas et al*, supra, y su progenie, y en cumplimiento con la doctrina correspondiente a la revisión de determinaciones interlocutorias en casos de Ley 2, *supra*, procedemos a evaluar únicamente la *Sentencia Declaratoria* cuestionada por Auto LOI. Nos explicamos.

Auto LOI nos señala que, el TPI cometió cuatro errores. Los primeros dos errores están dirigidos a impugnar la denegatoria a la solicitud de desestimación de la causa de acción por represalias, por la vía sumaria. A su vez, como segundo error, también cuestiona que, el foro primario determinara que, la querellante incurrió en actividad protegida por la Ley 115-1991, *supra*.

Es norma reiterada que, la Ley 2, *supra,* dispone un mecanismo procesal expedito para la rápida consideración y adjudicación de querellas de empleados u obreros en contra de sus patronos. *León Torres v. Rivera Lebrón,* 204 DPR 20, 30-31 (2020). Su alcance se extiende a varios estatutos laborales, entre estos, las querellas sobre salarios, beneficios y derechos laborales. *Ruiz Camilo v. Trafón Group, Inc.,* 200 DPR 254, 265 (2018).  Sin embargo y como se sabe, el Tribunal Supremo resolvió en *Dávila, Rivera v. Antilles Shipping, Inc.*, 147 DPR 483, 496 (1999) que, la revisión de resoluciones interlocutorias es contrario al carácter sumario que, precisamente, busca adelantar el procedimiento. De otra parte, el Tribunal Supremo ha reconocido que lo anterior no es absoluto. Por ello, los foros revisores deben mantener y ejercer su facultad revisora mediante *certiorari* solo en aquellas resoluciones interlocutorias dictadas en un procedimiento sumario (querellas laborales), en las siguientes instancias: (1) cuando el tribunal primario haya actuado sin jurisdicción; (2) en situaciones en las que la revisión inmediata dispone del caso por completo; o (3) cuando la

revisión tenga el efecto de evitar una grave injusticia. Véase lo resuelto en *Díaz Santiago v. PUCPR et al.*, 207 DPR 339, 349 (2021) y *Medina Nazario v. McNeil Healthcare*, 194 DPR 723 (2016).

En atención a lo anterior, colegimos que, el apelante no nos ha puesto en posición para apartarnos de la norma jurídica antes expuesta, por lo que, denegamos intervenir en la determinación de naturaleza interlocutoria emitida por el TPI, mediante la cual, denegó el petitorio sumario relacionada a la causa de acción al amparo de la Ley 115, *supra.* En su recurso no se reúnen los criterios que nos permitan la intervención solicitada en esta etapa de los procesos.

No obstante lo anterior, como tercer error, Auto LOI plantea que, erró el foro primario al concluir mediante la *Sentencia Declaratoria* que el *Acuerdo de Comisiones* suscrito entre las partes era nulo por limitar el derecho de los empleados a disfrutar de sus licencias por vacaciones y enfermedad. Por su parte, la señora Marrero Caldero sostiene que la *Sentencia Declaratoria* es correcta en derecho y procede concluir que las amonestaciones recibidas fueron contrarias a ley y el despido de la querellante fue injustificado. Destaca que, la Ley 180-1998, 29 LPRA sec. 250d(q)[8] expresamente prohíbe al patrono considerar las ausencias por enfermedad cargadas correctamente a la licencia de enfermedad, con o sin paga, para justificar acciones disciplinarias tales como suspensiones o despidos.

Auto LOI argumenta que, el referido *Acuerdo* es válido, ya que lo pactado entre ambas partes iba dirigido a establecer las cuotas

---

[8] Ningún patrono, supervisor o representante de estos podrá utilizar como parte del procedimiento administrativo de su empresa o como política de la misma, las ausencias por enfermedad que sean justificadas, como criterio de eficiencia de los empleados en el proceso de evaluación de estos, si es considerado para aumentos o ascensos en la empresa para la cual trabaja. Tampoco considerará las ausencias por enfermedad o la licencia especial por emergencia dispuesta en este Artículo, cargadas correctamente a la licencia de enfermedad, con o sin paga, para justificar acciones disciplinarias tales como suspensiones o despidos. 29 LPRA sec. 250d (q).

de venta, lo cual no tenía el propósito de interferir con las licencias de enfermedad y vacaciones de sus empleados. Alegó además que, decretar la nulidad total del *Acuerdo* implicaría que la parte querellante tenga que devolver todas las comisiones que devengó durante su tiempo como empleada pues, en caso de ser nulo el acuerdo, el contrato nunca produjo efectos jurídicos. Reitera que, el despido de la señora Marrero Caldero fue producto de su patrón de incumplimiento con las cuotas de ventas y que, aún si el *Acuerdo* fuera ilegal, habría que considerar el incumplimiento de la querellante con su cuota de ventas durante los meses en que no se ausentó y ello de por sí, constituiría justa causa al amparo de la Ley Núm. 80, *supra.*

Luego de estudiar detenidamente el recurso de apelación de epígrafe en la que se cuestiona la *Sentencia Declaratoria,* así como, el alegato en oposición y el apéndice ante nuestra consideración, constatamos que nos encontramos ante la adjudicación final de una causa de acción que, en esta etapa de los procesos, requiere nuestra intervención a los fines de la justicia. De nuestro análisis *de novo* de los petitorios sumarios sobre dicha causa colegimos que, existen controversias medulares que impiden la adjudicación por la vía sumaria. En su consecuencia, colegimos que, el TPI incidió al concluir, en esta etapa de los procesos que, la totalidad del *Acuerdo de Comisiones* es nulo.

Surge del expediente que, la señora Marrero Caldero se ausentó los días 9, 24, 26, 27 y 28 de mayo de 2022 y que estos fueron cargados a su licencia por enfermedad. No obstante, en el mes de junio, esta fue amonestada por escrito por incumplir con la cuota de ventas durante los dos meses previos, a pesar de que, estuvo ausente en varias ocasiones por motivos de enfermedad. Así lo reconoció también la parte apelada. De otra parte, Auto LOI reconoce que en el *Acuerdo de Comisiones* surge lo siguiente:

"Es requisito indispensable del puesto que todo vendedor cumpla por 3 meses consecutivos con la cuota mínima de ventas. El incumplimiento por 3 meses consecutivos de la cuota mínima de ventas resultará en la terminación de empleo, sin excepciones. **El disfrute de licencia de vacaciones o enfermedad no eximirá a ningún vendedor de esta exigencia.**" (Énfasis nuestro).

Ahora bien, también surge del expediente que, la señora Yaritza Agosto Torres, Gerente de Recursos Humanos, en representación de la parte apelada, declaró lo siguiente:

P. [...] ¿Usted me puede explicar qué quiere decir Auto LOI cuando habla sobre que el disfrute de licencia de vacaciones o enfermedad no exime al vendedor de cumplir con la cuota mínima de venta?
R. Sí, es que todo vendedor tiene, como muy bien dice, una cuota dice, una cuota mínima y el que se vaya de vacaciones no lo exime de ese cumplimiento. Porque muchos vendedores hacen esa cuota antes de irse de vacaciones o cual llegan. O sea, la venta no necesariamente necesita como que todo ese –o sea, el tiempo, que muchas veces lo hacen en la primera semana, en la segunda semana. Todo depende. Eso lo que te dice es que, si te vas de vacaciones o te estas por enfermedad, la cuota sigue corriendo.
P. ¿Sigue en pie?
R. Um-jum.
P. ¿Sigue en pie?
R. Um-jum
P. Pero si un ejecutivo de ventas se va diez o 15 días al mes por enfermedad, ¿comoquiera tiene que cumplir con esa cuota mínima de ventas del mes?
R. Cada caso, puedo decir, que --digo cada caso, porque si hay una persona que estuvo en un hospital, estuvo tres semanas, estuvo hospitalizado, no hay manera, claro. Se ---
P. ¿Se toma en consideración?
R. --toma en consideración. Por lo menos, en mi tabla acá casi siempre yo lo pongo como sombreado y verifico. Porque como ellos tienen tres meses para cumplir, muchas veces, si un mes no lo cumplieron, ¿qué sucede?, lo cumplen en cualquiera de los otros dos y no pasa nada. O sea, ellos siguen corriendo.
P. Entiendo. Entiendo lo que está diciendo. Pero si, por ejemplo, en julio y agosto el vendedor o la vendedora no cumple con su cuota y en septiembre tiene algún tipo de hospitalización o enfermedad, que esta fuera diez, 15 días en el mes, cuando yo voy al acuerdo de comisiones me dice que tiene que ser cumplida tres meses consecutivos sin excepciones. Entonces, si el último mes, que es septiembre, no cumple por estar hospitalizado, le pegunto si Auto LOI pone en vigor este acuerdo de comisiones.
R. Bueno, entiendo que se evalúan, porque claro está, en cada caso puede ser diferente. Hay cinco días. Hay tres días. Todo depende de cuánto es el certificado médico, qué pasó, qué no pasó. Porque a veces pueden tener tal vez una situación personal. O sea, **todo depende de la situación de cada caso.** (Énfasis nuestro).
[...][9]

---

[9] Apéndice, pág.184, en las pág. 46-47.

De lo antes, se colige la presunta postura de Auto LOI que, las situaciones sobre ausencias y el cálculo utilizado por la empresa para la medición de cuotas se evalúa caso a caso. Lo antes, no necesariamente hace que el *Acuerdo de Comisiones* en su totalidad resulte nulo. Tampoco establece su validez. Se desprende del expediente que, durante el mes de agosto, la parte apelante se ausentó durante cuatro (4) días por razones de enfermedad y posteriormente, fue amonestada nuevamente por incumplir con la cuota de ventas por segundo mes consecutivo. Lo anterior, tuvo como consecuencia que, esta fuese despedida de su empleo en el mes de septiembre de 2022. En su consecuencia, se puede apreciar un posible escenario donde Auto LOI penaliza a sus empleados vendedores por utilizar la licencia de enfermedad, al evaluar el cumplimiento con la cuota de ventas, aun cuando se encuentren haciendo uso de su licencia por enfermedad o vacaciones, esto en contravención de nuestro ordenamiento jurídico. No obstante lo anterior, también surge del expediente que, Auto LOI evalúa las situaciones de cumplimiento de cuotas y ausencias por enfermedad caso a caso. A esos efectos, el apelante arguye que, la interpretación del *Acuerdo de Comisiones* es un asunto relacionado a la intención contractual de no violentar la Ley 180-1998 *supra*, y a la vez, de no llegar al absurdo de eximir a un empleado de cumplir la cuota mínima en tres meses consecutivos ante una sola ausencia.

De nuestro análisis sosegado de la causa colegimos que, ante este cuadro fáctico y los hechos en controversia sobre la intención de las partes y, cómo en efecto, se puso en práctica el *Acuerdo de Comisiones* en este caso, el expediente demuestra que subsisten controversias medulares que impiden la adjudicación de la *Sentencia Declaratoria*, por la vía sumaria. El TPI incidió al declarar la nulidad de la totalidad del *Acuerdo de Comisiones* sin evaluar la totalidad de las circunstancias y hechos en controversia atinentes a

este caso particular, así como el efecto, si alguno, de dicha declaración de nulidad sobre las demás cláusulas del contrato de empleo en controversia. El foro primario entendió que, el *Acuerdo* es nulo de su faz porque penaliza a los empleados por no cumplir con su cuota de ventas, independientemente de si gozaban de una licencia de enfermedad o vacaciones. Sin embargo, no sopesó correctamente el testimonio de la gerente de recursos humanos que destacó que, el análisis de la empresa se hace caso a caso. En su consecuencia, resulta necesario atender las controversias de hechos atinentes a la forma que se trató el caso de la señora Marrero Caldero que podría resultar en un asunto de credibilidad. Además, el foro primario tampoco consideró que, del contrato surge una cláusula de separabilidad. En particular, la referida cláusula dispone que "[d]e mediar una declaración de nulidad por un tribunal con competencia sobre cualquiera de las cláusulas [allí] contenidas, las demás cláusulas que no sean afectadas por la declaración de nulidad mantendrán su vigencia y serán obligatorias y exigibles a las partes."[10]

Si bien es cierto que, penalizar a los empleados por incumplir con la cuota de ventas, aun cuando se encuentren disfrutando de la licencia de enfermedad o vacaciones, es contrario a la ley, esto resulta insuficiente para dictaminar mediante una *Sentencia Declaratoria* la nulidad de la totalidad del *Acuerdo de Comisiones*, en esta etapa de los procesos. Además, si persisten controversias sobre cuál fue la forma de calcular el cumplimiento de la cuota mínima, contando con o sin las ausencias de la empleada y durante cuál periodo consecutivo se realizó la evaluación, el foro primario no debió anular dicho *Acuerdo* en su totalidad. Añádase que, no surge de los hechos consignados por el TPI, determinaciones que atiendan de forma fehaciente la intención de Auto LOI, de no violentar la *Ley*

---

[10] Apéndice, pág. 169.

*de Vacaciones y de Licencias de Enfermedad*, supra, y, a su vez, aplicar un cálculo de días de forma equitativa y cónsono con el requerimiento de la cuota mínima por mes, sin menosprecio de la cantidad de días de ausencias por enfermedad de la apelada.

Por ello, y luego de justipreciar *de novo* la procedencia de la *Sentencia Declaratoria*, por la vía sumaria, colegimos que, el error imputado se cometió y procede revocar la determinación de nulidad del *Acuerdo De Comisiones,* en esta etapa de los procesos. Claro está, lo antes no prejuzga las determinaciones que, en su día, el foro primario consignará, así como la eventual adjudicación de esta causa. Previo a ello, le corresponderá al TPI atender controversias medulares sobre la forma que se calculó el periodo de tiempo y la medición de cumplimiento con la cuota mínima en este caso. Deberá determinar la intención de las partes en el acuerdo contractual de empleo junto al *Acuerdo de Comisiones* y, en particular, si las ausencias, aunque válidas, fueron o no por un periodo prolongado, o si, por el contrario, fueron insignificantes, que le permitiera a Auto LOI justificar sus acciones disciplinarias -sin violentar la ley- en un determinado periodo de tiempo.

Por todo lo antes concluimos que, el tercer error se cometió y, en su consecuencia, resulta innecesario atender los demás señalamientos.

**IV**

Por los fundamentos que anteceden, revocamos únicamente la *Sentencia Declaratoria* que forma parte del dictamen apelado.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones